**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Lexon Insurance Co.,

       Plaintiff,

    v.                                                   Case No. 1:10cv555

Devinshire Land                                    Judge Michael R. Barrett
Development, LLC, *et al.*,

       Defendants.


**OPINION & ORDER**

     This matter is before the Court upon Defendant Devinshire Land Development,
LLC's Motion to Dismiss the Complaint (Doc. 12) and Motion to Dismiss Devin F.
McCarthy Revocable Trust, Devin F. McCarthy, Janice L. McCarthy's Cross-claims (Doc.
20); and Defendants Queens Gap Acquisition, LLC, Keith Vinson and Paula Vinson's
Motion to Dismiss the Third Party Complaint, or in the Alternative, to Compel Arbitration
(Doc. 21).   Plaintiff Lexon Insurance Co. has filed Responses (Docs. 15, 33) and
Defendant Devinshire filed a Reply (Doc. 39).   Third-Party Plaintiffs Devin F. McCarthy
Revocable Trust, Devin F. McCarthy, Janice L. McCarthy have filed a Response (Doc.
32).

**I.**     **BACKGROUND**

     Plaintiff Lexon Insurance Company ("Lexon") is a Texas corporation, with its
principal place of business in Tennessee.   (Doc. 1, ¶ 1).   Defendant Devinshire Land
Development, LLC ("Devinshire") is North Carolina corporation, with its principal place of
business in North Carolina.   (Id., ¶ 2).

Devinshire is a real estate development company that sought to develop a residential golf community in Rutherford County, North Carolina called Queens Gap Subdivision. (Id., ¶ 7). Defendant Devin McCarthy was Devinshire's manager. (Doc. 12-1, Devin McCarthy Aff., ¶ 2).

Devin McCarthy was also a co-trustee of Defendant Devin F. McCarthy Revocable Trust, along with Defendant Janis McCarthy ("the McCarthy Defendants"). As trustees, Devin and Janis McCarthy are members of Defendant Queens Gap Holding Company, which was the sole member and owner of all rights, title and interest in several companies related to the Queens Gap development. Devinshire was among these companies.

Devinshire entered into two separate "Performance Agreements" with Rutherford County, which obligated Devinshire to complete construction of the various phases of the Subdivision by specified dates. (Doc. 1, ¶ 8). Rutherford County required Devinshire to acquire performance bonds to secure Land Development's performance obligations. (Id, ¶ 8). Lexon was the surety for these bonds, Land Development was the principal, and Rutherford County was the obligee. (Id., ¶ 9).

On May 22, 2009, the McCarthy Defendants sold the Queens Gap development companies, including Devinshire, to Third-Party Defendant Queens Gap Acquisition, a Delaware limited liability company. (Id., ¶ 19). Queens Gap Acquisition is controlled by Keith Vinson. (Doc. 12-2, Keith Vinson Aff., ¶ 1). The terms of the sale are included in the Purchase Agreement. (Doc. 9-1). Among those terms is an agreement to arbitrate. As part of the Purchase Agreement and a separate Indemnity Agreement, Queens Gap Acquisition and Vinson agreed to substitute themselves in place of the McCarthy

Defendants with respect to all obligations on the bonds or to Lexon. (See Doc. 9-2).

Lexon has issued bond premium invoices to Devinshire for the 2009-2010 period and the 2010-2011 period, which have not been paid. (Doc. 1, ¶¶ 17-18).

On July 26, 2010, Rutherford County asserted that Devinshire had failed to meet its construction milestone dates for Phases I or III of the Subdivision. (Id., ¶ 20).

In the Complaint, Lexon brings breach of contract claims against Devinshire and the McCarthy Defendants. Lexon is also seeking injunctive relief. Devin F. McCarthy, Devin F. McCarthy Revocable Trust, and Janice L. McCarthy responded with a Counterclaim against Lexon, Cross-Claims against Devinshire, and a Third-Party complaint against Keith Vinson, Paula Vinson and Queens Gap Acquisition ("the Third-Party Defendants"). However, Lexon and the McCarthy Defendants have dismissed their claims against one another. (Doc. 46).

In its first Motion to Dismiss, Devinshire argues that Lexon's claims against it should be dismissed for lack of personal jurisdiction and insufficient service of process. In a separate Motion to Dismiss, Devinshire argues that the cross-claims brought by the McCarthy Defendants should be dismissed for lack of personal jurisdiction.

In their Motion to Dismiss, the Third-Party Defendants argue that the Third-Party Complaint should be dismissed for lack of personal jurisdiction. In the alternative, the Third-Party Defendants argue that this Court should dismiss the Third-Party Complaint and compel arbitration.

## II. ANALYSIS

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a claim for lack of

3

jurisdiction over the person. The plaintiff bears the burden of establishing that such jurisdiction exists. *See Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003).

When the Court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing, the plaintiff "'need only make a prima facie showing of jurisdiction.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)) (internal citation omitted). The plaintiff can make this *prima facie* showing by "'establishing with reasonable particularity sufficient contacts between [the Defendant] and the forum state to support jurisdiction.'" *Neogen Corp.*, 282 F.3d at 887 (quoting *Provident Nat'l Bank v. California Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). However, where "'the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction,' the *prima facie* 'proposition loses some of its significance.'" *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (quoting *Int'l Techs. Consultants v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997)). In this case, the deposition of Devin McCarthy was taken and his affidavit was filed in the record. There does not appear to be any real dispute over the facts relating to jurisdiction.

### B. <u>Personal jurisdiction</u>

The Sixth Circuit has established a two-step inquiry to determine whether a federal district court sitting in a diversity-of-citizenship case can exercise personal jurisdiction over a defendant: (1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

The Sixth Circuit has explained that there are two kinds of personal jurisdiction: general and specific jurisdiction. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996) ("Jurisdiction may be found to exist either generally, in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state . . . or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum."). However, there has been some debate as to whether Ohio courts recognize general jurisdiction. *See Indus Trade & Technology, LLC v. Stone Mart Corp.*, 2011 WL 6256937, *2, n.1 (S.D.Ohio Dec.14, 2011) (describing split on whether general personal jurisdiction is available under Ohio law). The Sixth Circuit has recently stated that "under Ohio law, a court may exercise personal jurisdiction over a non-resident defendant only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute." *Conn*, 667 F.3d at 718. Accordingly, this Court will only analyze whether specific jurisdiction exists.

Ohio's long-arm statute provides, in relevant part, that:

A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

 . . .

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this

5

state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

Ohio Rev. Code § 2307.382(A).  The Ohio Supreme Court has explained that the "transacting any business" basis for extending jurisdiction set forth in Ohio Revised Code § 2307.382(A)(1), "is very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting any business in Ohio."  *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 481 (1990); *see also Brunner v. Hampson*, 441 F.3d 457, 464 (6th Cir. 2006) ("[t]he term 'transacting any business' as used in . . . the statute . . . will be given broad interpretation.") (quoting *Ricker v. Fraza/Forklifts of Detroit*, 828 N.E.2d 205, 209 (Ohio Ct. App. 2005)).

"Where a non-resident defendant contracts with an Ohio resident to create an ongoing business relationship, such defendant is 'transacting any business' in Ohio pursuant to the plain meaning of R.C. 2307.382(A)(1)."  *Total Quality Logistics v. Best Plastics, L.L.C.*, 930 N.E.2d 882, 887 (Ohio Ct. App. 2010) (citing *Buflod v. Von Wilhendorf, LLC*, 2007 WL 210790 (Ohio Com. Pl. Apr. 30, 2010)).  Ohio courts have identified two factors to help determine whether such contracts constitute transacting business with the meaning of the long-arm statute:

> The first factor is whether the non-resident defendant initiated the business dealing.  Logically, if the foreign corporation reached out to the Ohio corporation to create the business relationship, that is one factor that would go toward finding that the nonresident transacted business in Ohio.  The balance of the evidence must be considered to determine in which jurisdiction the parties undertook their discussions and communications and on what terms.  The second factor to be considered is whether the parties conducted their negotiations or discussions in Ohio or with terms affecting Ohio.  There must additionally be some continuing obligation that connects the nonresident defendant to the state or some terms of the

6

agreement that affect the state.

*Total Quality Logistics*, 930 N.E.2d at 887 (citations omitted).

To comport with due process, an exercise of personal jurisdiction requires that a defendant "have certain minimum contacts such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Sixth Circuit has set forth a three-part analysis to determine whether jurisdiction accords with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

### C.  Devinshire's Motion to Dismiss the Complaint

Devinshire argues that Lexon's claims against it must be dismissed for lack of personal jurisdiction. Devinshire states that it is a North Carolina manager-managed LLC with offices and employees in North Carolina. (Devin McCarthy Aff., ¶¶ 1, 7, 9). Devinshire states that at no time did it own or lease property in Ohio or have employees in Ohio. (Id., ¶¶ 4-5). Devinshire explains that it was engaged in the business of developing real property in North Carolina. (Id., ¶ 3).

In response, Lexon argues that Devinshire was "transacting business" in Ohio. Lexon explains that Michael McNamee, an attorney in Beavercreek, Ohio, assisted in the formation of Devinshire. (Doc. 37, Devin McCarthy Depo. at 10). Lexon points out that

7

Devinshire was registered as a foreign limited liability company with the Ohio Secretary of State and McNamee was listed as its statutory agent. (Id. at 17).

Lexon explains that while he was the manager of Devinshire, Devin McCarthy lived in Cincinnati, Ohio. (McCarthy Depo. at 13). Devin McCarthy conducted business on behalf of Devinshire through telephone calls and emails while he was in Cincinnati. Devinshire hired McNamee's law firm in Beavercreek, accounting firms in Cincinnati, Ohio and a technology firm in Cincinnati, Ohio to do work for it. (Id. at 22, 67, 70, 73, 76, 85). Devinshire marketed the Queens Gap development to individuals in Ohio through presentations made in Columbus, Ohio and Cincinnati, Ohio. (Id. at 92, 94, 97).

Finally, Lexon explains that Keith Vinson travelled to Cincinnati to discuss the potential acquisition of Devinshire and the Queens Gap development. (Id. at 61-63). Devin McCarthy negotiated the Purchase Agreement while he was in Ohio. (Id. at 59-60). Devin McCarthy signed the Purchase Agreement in Ohio. (Id. at 60). Keith Vinson traveled to Ohio to sign the Purchase Agreement. (Id.)

Devinshire responds that these acts took place before Devinshire was sold to Queens Gap Acquisition and Keith Vinson, and the sole contact between Vinson and Ohio was that Vinson flew to Cincinnati to discuss the acquisition of Devinshire.

The Sixth Circuit has explained:

> federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.

*Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)).

8

Accordingly, the acts which took place before Devinshire was sold are to be considered. However, even if the Court considers the contacts made on behalf of Devinshire, both before and after it was purchased, this Court concludes these contacts do not establish that Devinshire was "transacting business" in Ohio.

There is no dispute that Devishire has always been a North Carolina company and maintained its offices in North Carolina.   The contacts upon which Lexon relies are those made by Devin McCarthy, who was acting as an agent for Devinshire.   "The business activities of an agent may render the principal subject to the personal jurisdiction of an Ohio court by virtue of the "transacting * * * business" provisions of Ohio's long-arm statute."  *Floyd P. Bucher & Sons, Inc. v. Spring Valley Architects, Inc.*, 683 N.E.2d 875, 878 (Com. Pl. 1996) (citing Ohio Rev. Code § 2307.382(A)(1)).   However, none of the acts of Devin McCarthy or Keith Vinson created a continuing obligation that connects Devinshire to Ohio, and Lexon has not pointed to any terms of the agreement between itself and Devinshire which affect the state.   Lexon only states that the Phase III bonds, which are the basis of its breach of contract claim, were purchased in Ohio through an Ohio-based insurance company.   (Doc. 33-1, David Fenner Aff. ¶ 4-6).   However, under Ohio law, the mere solicitation of business by a nonresident defendant does not constitute transacting business in Ohio.   *U.S. Sprint Commc'ns Co. Ltd. P'ship v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048, 1052 (Ohio 1994).   Similarly, email and telephone communications alone do not establish jurisdiction.   *Barnabus Consulting Ltd. v. Riverside Health Sys., Inc.*, 2008 WL 2588579, *5 (Ohio Ct. App. June 30, 2008) (citing *Joffe v. Cable Tech*, 163 Ohio App.3d 479 (Ohio Ct. App. 2005).

In addition, Lexon's claims did not arise from the purchase of the bonds from an

Ohio-based insurance company.    *See* Ohio Rev.Code § 2307.382(C) ("When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him").    Instead, Lexon's claims are for breach of contract based on the failure to pay the premiums on the bonds.    Therefore, the Court concludes that there is no personal jurisdiction over Devinshire.    *Accord Cooper v. Digital Processing Sys., Inc.*, 182 F.R.D. 242, 252 (N.D. Ohio 1998) *aff'd*, 215 F.3d 1342 (Fed. Cir. 1999) (no personal jurisdiction under Ohio's long arm statute where patent licensee entered into fee negotiations with attorney and hired other attorneys in Ohio because patent infringement claim did not arising from these contacts with Ohio). Because Lexon has not established the minimum contacts necessary under Ohio's long-arm statute, it is unnecessary to engage in the constitutional due process inquiry. *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 514-15 (6th Cir. 2006).    Accordingly, Devinshire Motion to Dismiss the Complaint is GRANTED.

### D.    Devinshire's Motion to Dismiss Cross-claims

Devinshire argues that the McCarthy Defendants' cross-claims against Devinshire should be dismissed for lack of personal jurisdiction for the same reasons that Lexon's claims were dismissed.

The McCarthy Defendants respond that personal jurisdiction exists based on much of the same evidence which Lexon relied upon to establish personal jurisdiction, including the fact that Devinshire's sole owner and member was an Ohio limited liability company and its manager, Devin McCarthy, resided in Ohio.[1]    The McCarthy Defendants

---

[1]As part of their discussion of jurisdiction under Ohio's long-arm statute, the McCarthy Defendants argue that Devinshire was "transacting business" in Ohio under Ohio Revised Code §

also point out that Devin McCarthy conducted business on behalf of Devinshire in Ohio and Devinshire solicited and marketed the Queen's Gap Development in Ohio.

The McCarthy Defendants also rely on the Purchase Agreement, through which Devinshire and the Queen's Gap development was transferred to Third-Party Defendant Queens Gap Acquisition. The McCarthy Defendants explain that the Purchase Agreement was negotiated and executed by Keith Vinson individually and on behalf of Queens Gap Acquisition in Ohio. The McCarthy Defendants also explain that after the Purchase Agreement was signed, Keith Vinson traveled to Ohio several times to meet with Devin McCarthy to discuss issues related to the Lexon bonds.

The Court concludes that the McCarthy Defendants have not established that Devinshire was transacting business under Ohio's long-arm statute. Even though the parties conducted their negotiations or discussions in Ohio, the McCarthy Defendants have not identified terms of the Purchase Agreement which affect Ohio. *See Total Quality Logistics*, 930 N.E.2d at 887. Similarly, the McCarthy Defendants have not identified some continuing obligation which connects Devinshire to Ohio. *See id.*.

However, even if this Court were to find that these contacts constitute transacting business under Ohio's long-arm statute, the Court concludes that the exercise of jurisdiction would not comport with due process under the Constitution.

There must be "some act" by which defendants "purposefully avail[ ]" themselves of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

---

2307.382 (A)(1) but also cite Ohio Revised Code § 2307.382 (A)(3) ("Causing tortious injury by an act or omission in this state"). However, the McCarthy Defendants' claims against Devinshire do not include a tort claim. Therefore, this provision is inapplicable.

The contacts must therefore create a "substantial connection" to the forum state--where defendants have deliberately "engaged in significant activities within a State" or have "created 'continuing obligations' between [themselves] and residents of the forum--and "proximately result from the actions by the defendant[s] themselves," such that it is "presumptively not unreasonable to require [defendants] to submit to the burdens of litigation in that forum as well."  *Id.* at 475-76.

In determining what constitutes "significant activities" or a "substantial connection," the Supreme Court has explained that a contract with an out-of-state party alone does not automatically establish sufficient minimum contacts.  *Id.* at 478.  The Supreme Court has explained that "a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'"  *Id.* at 479 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316-17 (1943)).  Therefore, "[i]t is these factors-prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing-that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."  *Id.*

Here, the Purchase Agreement is between Queens Gap Acquisition, a Delaware limited liability company, and Queens Gap Holding, an Ohio limited liability company. Devinshire was among numerous North Carolina limited liability companies which were owned by Queens Gap Holding before it was sold to Queens Gap Acquisition as part of the Purchase Agreement.   The Purchase Agreement is for the sale of the Queens Gap development, which is located in North Carolina.

The Purchase Agreement also provides that it "shall be governed by and

construed in accordance with the laws of the State of North Carolina."   The Sixth Circuit

has explained that a choice-of-law provision "is by no means irrelevant to the question of

personal jurisdiction."   *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1295 (6th

Cir. 1989), *cert. denied*, 494 U.S. 1056 (1990) (citing *Burger King*, 471 U.S. at 481).   The

court explained that in the case before it:

> A showing that [the defendant] purposefully availed itself of the benefits and
> protections of Michigan law is essential to the plaintiff's jurisdictional claim,
> as we shall see, and this essential showing is not helped by the fact that the
> parties chose to have the contract governed by the law of Florida, rather
> than the law of Michigan.   The parties having elected to invoke the benefits
> of Florida law for deciding disputes under the contract, there is obviously
> much to be said in favor of letting such disputes be resolved in a Florida
> court.

*Id.*

However, the Purchase Agreement also provides that the payment of the

purchase price was made under a promissory note in favor of Queens Gap Holding

Company.   The promissory note had a maturity date of nine years from the date of the

closing.   The promissory note was personally guaranteed by Keith and Paula Vinson.

This Court concludes that Devinshire's contacts with Ohio are "fortuitous" and

"attenuated."   *See Burger King*, 471 U.S. at 475 (explaining that the "'purposeful

availment' requirement ensures that a defendant will not be haled into a jurisdiction solely

as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.").   The Sixth Circuit has

explained that it is important to examine the quality of the parties' relationship:

> In *Kerry Steel Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th
> Cir.1997), we held that an out-of-state defendant-buyer did not purposefully
> avail itself of the benefits and protections of the forum state's laws because,
> in part, no facts connected the subject matter or performance of the contract
> at issue to the forum state. Furthermore, we held that any negative
> economic effect on the in-state plaintiff-seller did not create a determinative

13

> impact on the state economy, as " 'the locus of such a monetary injury is immaterial, as long as the obligation did not arise from a privilege the defendant exercised in the forum state.' " *Id.* (quoting LAK, 885 F.2d at 1303). Likewise, in *International Technologies Consultants v. Euroglas*, 107 F.3d 386, 395 (6th Cir.1997), we found it "purely fortuitous" that the foreign defendant-seller had any contact with Michigan. The defendant was not attempting to "exploit any market for its products" in the state of Michigan, but rather had contact with the state only because the plaintiff chose to reside there. *See id.*

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722-23 (6th Cir. 2000). Similarly, in this case, there are no facts connected with the performance of the Purchase Agreement to the state of Ohio. The Queens Gap development is located in North Carolina. While there was an ongoing obligation to make payments on the promissory note, those payments would presumably be issued from North Carolina. The failure to make these payments and the location of the resulting monetary injury is "immaterial." In this instance, it is "purely fortuitous" that Devinshire had any contact with Ohio, and any contacts with Ohio were only because the McCarthy Defendants live there. The object of the Purchase Agreement and the relationship between Devinshire and the McCarthy Defendants was to develop property in North Carolina. Moreover, the Purchase Agreement provides that it is governed by North Carolina law. Therefore, the purposeful availment requirement is not met, and personal jurisdiction over Devinshire does not exist. Accordingly, Defendant Devinshire Land Development, LLC's Motion to Dismiss Devin F. McCarthy Revocable Trust, Devin F. McCarthy, Janice L. McCarthy's Cross-claims is GRANTED.

### E.   The Third-Party Defendants' Motion to Dismiss

Third-Party Defendants Keith Vinson, Paula Vinson and Queens Gap Acquisition argue that the claims against them should be dismissed for lack of personal jurisdiction.

14

Third-Party Defendants explain that Keith and Paula Vinson are residents of North Carolina and Queens Gap Acquisition is a Delaware company.   Third-Party Defendants explain that the claims against them are related to the sale of the Queens Gap development, which is located in North Carolina.   Third-Party Defendants also point to the North Carolina choice-of-law provision in the Purchase Agreement.

The McCarthy Defendants concede that there is no evidence to support the exercise of jurisdiction over Paula Vinson.   (Doc. 32, at 21).   However, the McCarthy Defendants argue that there is personal jurisdiction over Keith Vinson and Queens Gap Acquisition because Keith Vinson traveled to Ohio to negotiate and execute the Purchase Agreement individually and on behalf of Queens Gap Acquisition.   The McCarthy Defendants also argue that the Purchase Agreement created continuing obligations between Vinson and Queens Gap Acquisition and themselves.

The Court concludes that personal jurisdiction does not exist over the Third-Party Defendants for many of the same reasons that personal jurisdiction does not exist over Devinshire.   The Court finds that it was "purely fortuitous" that the Third-Party Defendants had any contact with Ohio.   The Third-Party Defendants were not attempting to "exploit any market for its products" in the state of Ohio.   *See Calphalon*, 228 F.3d at 723.   Instead, Third-Party Defendants were purchasing a real estate development located in North Carolina.   The Third-Party Defendants' contacts with Ohio were "purely fortuitous" and only because the McCarthy Defendants chose to reside there.   *See id.* Accordingly, Third-Party Defendants' Motion to Dismiss the Third Party Complaint is GRANTED.

III.    **CONCLUSION**

Based on the foregoing, it is hereby **ORDERED** that:

1.    Defendant Devinshire Land Development, LLC's Motion to Dismiss the Complaint (Doc. 12) is **GRANTED**;

2.    Defendant Devinshire Land Development, LLC's Motion to Dismiss Devin F. McCarthy Revocable Trust, Devin F. McCarthy, Janice L. McCarthy's Cross-claims (Doc. 20) is **GRANTED**;

3.    Defendants Queens Gap Acquisition, LLC, Keith Vinson and Paula Vinson's Motion to Dismiss the Third Party Complaint, or in the Alternative, to Compel Arbitration (Doc. 21) is **GRANTED;** and

4.    This matter is **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

_/s/ Michael R. Barrett_
Michael R. Barrett, Judge
United States District Court

16